1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   KAREN DENICE EDMONDSON,

12            Plaintiff,                    CIV S-11-1843 GGH

13        vs.

14   MICHAEL J. ASTRUE,                     ORDER
     Commissioner of Social Security,
15
              Defendant.
16   _____/

17            Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying her application for Supplemental Security Income ("SSI")

19   under Title XVI of the Social Security Act ("Act").  On May 15, 2012, the undersigned ordered

20   further briefing on the issue of whether the ALJ should have analyzed whether plaintiff met

21   Listing 7.02 or whether her non-compliance with treatment excused the ALJ from this analysis.

22   The parties have now submitted further briefing which has been considered.  For the reasons that

23   follow, plaintiff's Motion for Summary Judgment is GRANTED IN PART, the Commissioner's

24   Cross Motion for Summary Judgment is DENIED, and this matter is remanded to the ALJ for

25   further findings as directed in this opinion.  The Clerk is directed to enter judgment for plaintiff.

26   ///

                                            1

BACKGROUND

Plaintiff, born March 11, 1958, applied on May 22, 2008, for disability benefits, with a protective filing date of April 8, 2008.  (Tr. at 114, 17.)  Plaintiff alleged she was unable to work since April 1, 2008, due to multiple pulmonary problems including shortness of breath, blood clots and high blood pressure.  (Id. at 127.)  In a decision dated February 18, 2010, ALJ Laura Speck Havens determined that plaintiff was not disabled.  (Id. at 17-25.)   The ALJ made the following findings:[1]

> 1. The claimant has not engaged in substantial gainful activity since April 8, 2008, the application date.  (20 CFR 416.971 *et seq.*)

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment? If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

2.    The claimant has the following severe impairments: chronic obstructive pulmonary disease (COPD), venous insufficiency and obesity (20 CFR 416.920(c)).

3.    The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can sit, stand and/or walk for 6 hours ou[t] of an 8-hour workday, can push or pull with her lower extremities on an occasional basis, can occasionally climb, balance, stoop, kneel, crouch and crawl, and must avoid moderate exposure to heights, moving machinery, humidity, dust, fumes, smoke and temperature extremes.

5.    The claimant is unable to perform any past relevant work (20 CFR 416.965).

6.    The claimant was born on March 11, 1958 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

7.    The claimant has at least a high-school education and is able to communicate in English. (20 CFR 416.964).

8.    Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 416.969 and 416.969(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since April 8, 2008, the date the application was filed (20 CFR 416.920(g)).

(Tr. at 19-25.)

///

///

///

3

ISSUES PRESENTED

Plaintiff has raised the following issues: A.  Whether the Commissioner Erred in Failing to Analyze Whether Plaintiff's Condition Meets or Equals Listing 7.02 for Chronic Anemia; B.  Whether the Commissioner Erred in Failing to Meaningfully Analyze the Impact of Plaintiff's Severe Anemia Due to Heavy Vaginal Bleeding Resulting in Multiple Blood Transfusions and Hospitalizations; C.  Whether the Commissioner Erred in Concluding that Plaintiff was not Credible and Non-compliant in Not Having a Hysterectomy; and D.  Whether the Commissioner Erred in Relying on the Opinions of Medical Providers Who Were Not Aware of her Multiple Blood Transfusions as her Condition Significantly Worsened After the Records were Collected at the Initial and Reconsideration Levels.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999). Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

ANALYSIS

A.  Listing 7.02

Plaintiff contends that the ALJ erred in failing to analyze whether plaintiff met the listing for chronic anemia.

The Regulations' "Listing of Impairments" ("Listings") lists impairments to thirteen categories of body systems which are severe enough to preclude any gainful activity. Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990); 20 C.F.R. § 404.1520(d).  When all the requirements of a listing are met, the described condition is irrebuttably presumed disabling. Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985); 20 C.F.R. § 404.1520(d).

At the third step of the disability analysis, the ALJ determines whether a person's condition either "meets" or "equals" a listing.  A mere *diagnosis* of a listed impairment is not sufficient.  Specific findings included in each listing also must be met.  See, e.g., Key v. Heckler, 754 F.2d 1545, 1550 (9th Cir. 1985).  Alternatively, other diagnostic tests, or the combined effects of various conditions, may demonstrate the "equivalent" of the specific required findings. See, e.g., Sullivan v. Zebley, 493 U.S. 521, 531 (1990); Marcia v. Sullivan, 900 F.2d 172 (1990). In sum, however, unless an impairment is as severe as and has lasted as long as described in the listing, a person is not presumptively disabled.  Young, 911 F.2d at 183.

Plaintiff contends that the ALJ, although acknowledging that plaintiff required "many blood transfusions," failed to analyze whether plaintiff met Listing 7.02.

This listing provides:

7.02 Chronic anemia (hematocrit persisting at 30% or less due to

any cause). With:

A. Requirement of one or more blood transfusions on an average

of at least once every 2 months; or

B. Evaluation of the resulting impairment under criteria for the

affected body system.

Chronicity is indicated by "persistence of the condition for at least 3 months" and the "laboratory findings cited must reflect the values reported on more than one examination over that 3-month period." Id. at 7.00.

///

Plaintiff asserts that the medical records reflect her hematocrit level of less than thirty percent over an almost two-year period, that she underwent five blood transfusions over a one-year period, with two sets of transfusions only weeks apart.  Plaintiff also argues that the state agency physicians, upon whom the ALJ relied, were not aware of plaintiff's blood transfusions.  Because the ALJ did not analyze whether plaintiff met this listing, plaintiff contends that pursuant to SSR 96-6p, the case must be remanded for the ALJ to call a medical expert on this issue.

The Commissioner argues that plaintiff has not met Part A of the listing because she did not require blood transfusions once every two months and "the anemia had not caused significant damage to a body system."

The ALJ presumably did not consider Listing 7.02 because she only stated that she had considered Listing 3.02A for chronic obstructive pulmonary disease.  (Tr. at 19.)  The ALJ did spend a good portion of the opinion discussing plaintiff's menorrhagia and anemia, however.  She referred to plaintiff's history of menorrhagia and anemia, and her blood transfusions, but noted that plaintiff had not been compliant with medication and treatment.  (Tr. at 21.)  For example, the ALJ noted that although a hysterectomy was recommended, it had not been scheduled.  Although plaintiff had received an intra-uterine device,[2] she continued to have bleeding.  Because she was being treated with Coumadin for deep vein thrombosis, side effects of this drug included bleeding, anemia and shortness of breath.  After plaintiff was taken off Coumadin, her menorrhagia, anemia and blood clots continued.  (Id.)  The ALJ concluded discussion of this impairment by finding that plaintiff did not follow up with a gynecologist, she did not testify at hearing that she continued to have menorrhagia, or that she had any functional limitation other than many blood transfusions, from this condition, and the record indicated she was not compliant with treatment.  (Id.)

---

[2]  Apparently, for women with menorrhagia, some IUDs may be a cost-efffective alternative to hysterectomy.  Http://womens-health.jwatch.org.

1    Although significantly there are no gynecological records in the file, the records

2    submitted indicate that Listing 7.02 should have been considered by the ALJ.  Plaintiff had

3    chronic anemia based on hematocrit readings at 30% or less on October 4, 2007, (tr. 184),

4    April 4, 2008 (tr. 182), May 12, 2008 (tr. at 180), July 31, 2008 (tr. at 249), August 1, 2008

5    (tr. 334), September 11, 2008 (tr. 224, 230), October 6, 2008 (tr. 246), July 17, 2009 (tr. 317),

6    July 18, 2009 (tr. 305), July 19, 2009 (tr. 315), September 10, 2009 (tr. 356), September 12, 2009

7    (tr. 356), September 16, 2009 (tr. 366.)  Plaintiff was taking Coumadin during the period from

8    April 2008 to October 2008; however, her hematocrit levels continued at the same low levels

9    after this time.  The record indicates that the first recommended blood transfusion was on

10   April 14, 2008, but plaintiff refused at that time.  (Tr. at 174, 182.)  Plaintiff then began

11   complying with recommended transfusions and received them on August 22, 2008,

12   September 12, 2008, February 10, 2009, June 4, 2009, and July 18, 2009.  (Tr. at 249, 233, 367-

13   68, 404, 303-04.)

14   Defendant argues that the physicians' notes indicate no basis for presumptive

15   disability.  The ALJ relies in part on the various physicians who were not aware of plaintiff's

16   blood transfusions, however.  Dr. Sharma did not have any medical records when he examined

17   plaintiff.  (Tr. at 194-99.)  At this exam, conducted October 11, 2008, plaintiff had not yet

18   received three blood transfusions.  The ALJ also relied on the State agency medical consultant's

19   reports which do not reflect awareness of plaintiff's blood transfusions.  One such report, dated

20   July 8, 2008, was written before plaintiff had received any transfusions.  It notes only that

21   plaintiff was not compliant.  (Tr. at 187.)  Another report, although dated November 6, 2008,

22   does not reference any transfusions, indicating that the reviewer was not aware of them.  (Tr. at

23   218-19.)  Based on this evidence, plaintiff appears to have met the listing, and the ALJ should

24   have analyzed it.

25   In regard to failure to follow treatment, which may be grounds to find that a

26   listing is not met, the record indicates that although plaintiff refused to get a transfusion in April,

7

1  2008, she did become compliant and received five transfusions after that initial refusal, after

2  being provided with alternatives to surgery, and advised that she must be compliant or risk death.

3  (Tr. at 173-74.)  Plaintiff also accepted medications.  (Id.)  Even after plaintiff stopped

4  Coumadin, which was believed to have contributed to the excessive bleeding, plaintiff's

5  menorrhagia continued, and further transfusions were necessary.  (Tr. at 244, 367-68, 404,

6  303-04.)  Additionally, she agreed to receiving an IUD, which is one recommended course of

7  treatment for this condition, but it was not successful.  (Tr. at 244.)  Although plaintiff at one

8  point refused a pelvic exam, she explained that she was on her period.  (Tr. at 178.)  Contrary to

9  the ALJ's statement that plaintiff had no follow-up with a gynecologist, (tr. at 21), the record

10  indicates that she had received gynecological treatment for her menorrhagia.  (Tr. at 246.)  As

11  plaintiff points out, a hysterectomy was not unconditionally recommended.  Treating notes

12  indicate that a hysterectomy was problematic due to plaintiff's anemia.  (Id. at 243.)  Another

13  treating note states, "hysterectomy (doubt ablation will be successful as Mirena [IUD] not

14  successful."  (Tr. at 244.)  Furthermore, contrary to the ALJ's statement that plaintiff did not

15  testify at hearing that she continued to have menorrhagia, there are numerous such references in

16  the hearing transcript.  Plaintiff testified that she was hospitalized the year before the hearing

17  after she was found to be severely anemic, and received a blood transfusion at that time.  (Tr. at

18  35.)  Plaintiff's attorney examined plaintiff about her multiple blood transfusions, including how

19  many and how often, and her hematocrit levels.  (Tr. at 46-47.)

20  Defendant's own citation in its supplemental briefing concedes that even if an

21  ALJ finds a failure to follow a prescribed course of treatment, the ALJ must nevertheless analyze

22  whether the plaintiff meets or equals a listing.

23  Social Security Ruling 86-8 provides in part:

24  when such an individual's impairment or combination of
impairments meets or equals the level of severity described in the
25  Listing, and also meets the duration requirement, disability will be
found on the basis of the medical facts alone in the absence of

26  ///

1    evidence to the contrary (e.g., the actual performance of SGA, or
     failure to follow prescribed treatment without a justifiable reason).
2

3    This ruling presumes that a listing is met before evidence to the contrary is

4    considered.

5    Furthermore, Social Security Ruling 82-59, specifically addressing "failure to

6    follow prescribed treatment," "only appl[ies] to claimants who would otherwise be disabled

7    within the meaning of the Act." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).  Here, the

8    ALJ failed to make a specific finding that plaintiff was not disabled without regard to her failure

9    to seek treatment because he did not consider Listing 7.02.  More specifically, the ALJ may only

10   determine that plaintiff failed to follow prescribed treatment where all of these factors are met:

11          1. The evidence establishes that the individual's impairment
            precludes engaging in any substantial gainful activity (SGA) or, in
12          the case of a disabled widow(er) that the impairment meets or
            equals the Listing of Impairments in Appendix 1 of Regulations
13          No. 4, Subpart P; and

14          2. The impairment has lasted or is expected to last for 12
            continuous months from onset of disability or is expected to result
15          in death; and

16          3. Treatment which is clearly expected to restore capacity to
            engage in any SGA (or gainful activity, as appropriate) has been
17          prescribed by a treating source; and

18          4. The evidence of record discloses that there has been refusal to
            follow prescribed treatment.
19

20   SSR 82-59.[3]

21   _____

22          [3] SSR 82-59 provides in relevant part (emphasis added):

23          Individuals with a disabling impairment which is amenable to treatment that could be
            expected to restore their ability to work must follow the prescribed treatment to be found
24          under a disability, unless there is a justifiable cause for the failure to follow such
            treatment ...
25

26          The underlying regulation, 20 C.F.R. § 416.930 (and companion regulation 20 C.F.R.
     § 404.1530 under Title II) similarly provides:

9

Based on the aforementioned authority and the record referenced herein, the ALJ erred in failing to consider whether plaintiff met listing 7.02. Based on the evidence submitted, the undersigned finds that plaintiff did meet this listing and is entitled to benefits.

The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court. Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990). If additional administrative proceedings would remedy the defects in the decision, remand is appropriate. Salvador v. Sullivan, 917 F.2d 13, 15 (9th Cir. 1990); Barbato v. Commissioner of Social Security Admin., 923 F. Supp 1273, 1277-78 (C.D.Cal. 1996).

The only remaining question is whether, based on plaintiff's age, her anemia based on menorrhagia may have resolved with the conclusion of menopause. Therefore, remand is ordered for the purpose of obtaining a medical expert opinion as to the permanency of this

---

(b) When you do not follow prescribed treatment. If you do not follow the prescribed treatment without a good reason, we will not find you disabled ...

Both 20 C.F.R. § 416.930 and SSR 82-59 identify specific acceptable reasons for declining to following prescribed treatment, some of which may be present here.

20 C.F.R. § 416.930(c) sets forth the following examples of acceptable reasons for declining to following prescribed treatment:

(1) The specific medical treatment is contrary to the established teaching and tenets of your religion.
(2) The prescribed treatment would be cataract surgery for one eye when there is an impairment of the other eye resulting in a severe loss of vision and is not subject to improvement through treatment.
(3) Surgery was previously performed with unsuccessful results and the same surgery is again being recommended for the same impairment.
(4) The treatment because of the enormity (e.g. open heart surgery), unusual nature (e.g. organ transplant), or other reason is very risky for you; or
(5) The treatment involves amputation of an extremity, or a major part of an extremity.

Additional acceptable reasons for declining to following prescribed treatment set forth in SSR 82-59 include, but are not limited to: fear of surgery that is so great that the treating physician decides the plaintiff is not a satisfactory candidate, where "a physician has advised the chances of obtaining good surgical results are poor," or where there is an inability to pay for prescribed treatment and free community resources are unavailable.

1  condition, whether the condition continued, and for how long.  Benefits will be awarded for a

2  closed period to be determined based on the medical expert's opinion.

3  Plaintiff's other assignments of error have been addressed to the extent

4  appropriate within this opinion.  Those issues not addressed are not pertinent to the decision to

5  remand.

6  CONCLUSION

7  Accordingly, plaintiff's Motion for Summary Judgment is GRANTED in part

8  pursuant to Sentence Four of 42 U.S.C. § 405(g); the Commissioner's Cross Motion for

9  Summary Judgment is DENIED; and this matter is remanded for further findings in accordance

10  with this order.  The Clerk is directed to enter Judgment for plaintiff.

11  DATED: June 25, 2012

12    /s/ Gregory G. Hollows
UNITED STATES MAGISTRATE JUDGE

13

14

15  GGH/076/Edmondson1843.ss.wpd

16

17

18

19

20

21

22

23

24

25

26